FILED

2011 Nov-17  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH SMOOT,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No.: 2:10-CV-1106-VEH** |
| | **)** | |
| **H&Z ENTERPRISES, LLC,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

---

## <u>MEMORANDUM OPINION & ORDER</u>

Before the Court is "Plaintiff's Motion for Leave To Supplement Response to Motion for Summary Judgment" (Doc. 59) (the "Motion To Supplement Response"), and the "Plaintiff's Motion for Leave To Amend Scheduling Order, Motion To Compel and Motion for Sanctions" (Doc. 63) (the "Motion for Leave To Amend Scheduling Order," "Motion To Compel," or "Motion for Sanctions"). Defendant opposes these Motions, which have been fully briefed by the parties, and are now under submission. In addition, the Court held a telephone conference with all parties on October 11, 2011, which addressed the need to resolve these Motions before the Court rules on the Defendant's pending Motion for Summary Judgment (Doc. 47). In response to the issues raised during the telephone conference, the Court entered a

Evidence Preservation Order (Doc. 70) and an Amended Scheduling Order (Doc. 71).

Having carefully reviewed the Motions presently before the Court, the Court is of the opinion, for the reasons set out below, that the Motion To Supplement Response is due to be **GRANTED**; the Motion To Compel is due to be **GRANTED IN PART** and **DENIED IN PART**; the Motion for Sanctions is due to be **DENIED**; and the Motion for Leave To Amend Scheduling Order is due to be **GRANTED**.

## I.      BACKGROUND[1]

Plaintiff Elizabeth Smoot ("Smoot" or "Plaintiff") filed pregnancy and sex discrimination claims against her former employer, Defendant H&Z Enterprises, LLC ("H&Z"). H&Z is a franchisee of several spas, FaceLogic International and Massage Envy Limited.[2] Clay Haley ("Haley") and Mike Zito ("Zito") are H&Z's owners.

H&Z hired Smoot in January 2008 to work as an Assistant Clinic Administrator and a licensed Massage Therapist. In that position she alleges that she provided massage therapy services to clients "and helped to manage the Massage Envy store." (Doc. 1, Complt. ¶ 9). In February 2008, she was promoted to Clinic Administrator and received a raise. (*Id.* ¶ 10). She continued to manage the Massage

---

[1]  This section is set out only to provide context for Plaintiff's Motions. The "facts" set out herein are merely the parties' allegations.

[2]  Facelogic and Massage Envy were formerly named as Defendants, but have been dismissed from the lawsuit prior to summary judgment briefing.

Envy store until she was directed to assist with the opening of the new FaceLogic store around September 2008. (*Id*. ¶ 11).  Smoot then worked as a manager for Facelogic, while maintaining her duties as Clinic Administrator of Massage Envy and as a licensed Massage Therapist.  (*Id*.).

Toward the end of January 2009, Smoot received a 10 percent raise, with a promise of another 10 percent raise when the economy stabilized.  (*Id*. ¶ 12).  Less than three months later, on April 1, 2009, she announced her pregnancy and indicated to H&Z that she intended to take off 30 days after the birth of her child.  (*Id*. ¶ 13).  Smoot alleges that H&Z began searching for a person to replace her after she notified them of her pregnancy. (*Id*. ¶ 15).

On May 28, 2009, H&Z discharged Smoot, allegedly without prior notice, informing her that they needed to terminate her employment and eliminate her salary in order to "cut its budget and achieve profitability."  (*Id*. ¶ 14).

On May 29, 2009, Smoot says she learned that her position was being replaced by another female named Allison Boles ("Boles"), who was hired after Smoot announced her pregnancy, but before her discharge.  Smoot alleges that Boles was not pregnant and had no prior managerial experience when hired.  (*Id*. ¶ 15).

## II.   MOTION TO SUPPLEMENT RESPONSE

Plaintiff's Motion To Supplement Response seeks leave to supplement her Response (Docs. 50-56) to H&Z's Motion for Summary Judgment (Doc. 47). Specifically, she seeks to supplement her evidentiary submission (Doc. 51 *et seq.*) and her Statement of Additional Undisputed and Disputed Facts (Doc. 50 at 1-17) to present new facts established by the belated production of certain evidence. She also seeks to amend her Memorandum of Law (*see generally* Doc. 50) to explain the legal significance of those new facts.

The new facts pertain to Plaintiff's recent receipt of thousands of messages from Julie Dutton ("Dutton"), a former H&Z employee, which include text messages and e-mails Dutton exchanged with Zito, Haley, and Boles on her personal cellular device. Smoot maintains that these text messages were responsive to her discovery requests and were improperly withheld during discovery.[3] Smoot also asserts that the text messages Dutton has recently produced are relevant to "many issues raised in this case, including, but not limited to whether H&Z acted with discriminatory intent when it discharged Smoot, whether the reason for her discharge is a pretext for

---

[3] In her Motion To Supplement Response, however, Smoot does not seek sanctions based on her contention that Dutton's text messages were improperly withheld. (Doc. 64 at 2 ("In this Motion, Ms. Smoot does not seek sanctions or any relief other than to supplement her response to the Motion for Summary Judgment. The plain fact that these discovery materials were requested but not produced and that they are relevant and admissible to the issues raised on summary judgment is enough to support the relief requested.").

discrimination, whether Smoot was replaced by Boles and later Dutton, and whether

H&Z has engaged in a pattern and practice of discrimination." (Doc. 63 at 13).[4]

Smoot thus asks the Court to grant her relief as follows:

> Plaintiff Elizabeth Smoot respectfully requests that this Court enter an
> order granting her leave to supplement her response to the Motion for
> Summary Judgment filed by Defendant H&Z Enterprises, LLC to
> include the text messages produced by Julie Dutton, which are attached
> to her Declaration as Exhibits A – B as well as the testimony in ¶¶ 1-7
> of her Declaration.

(Reply, Doc. 64 at 10).

H&Z opposes the Motion To Supplement Response on several grounds. H&Z's

primary argument is that it did not improperly withhold any documents from

production,[5] and that the newly discovered text messages are not relevant to the issues

raised in its Motion for Summary Judgment.[6]  Thus, H&Z argues that Smoot's request

---

[4]  As to the replacement issue in particular, which is addressed in H&Z's Memorandum of Law in Support of its Motion for Summary Judgment (Doc. 48 at 22-23), Smoot contends that Dutton's text messages "directly contradict[]" the position taken in H&Z's brief because "the text messages and related Affidavit testimony clearly support an inference, with other evidence, that Ms. Dutton, like Ms. Boles, was the manager of Facelogic and performed duties that Smoot performed before her discharge." (Doc. 63 at 13 ¶ 32). Thus, Dutton's evidence is relevant to the case in the context of her role as a comparator.

[5]  H&Z's position on this ground is that any text messages sent or received by Dutton "resided exclusively on [her] personal cell phone[] and were not within the possession, custody, or control of H&Z." (Doc. 62 at 4 ¶ 15).

[6]  H&Z argues that "[t]here are only seven text messages that are remotely relevant to Ms. Dutton's job title and job responsibilities." (Doc. 62 ¶ 11).

to amend her Response is not justified.

H&Z's assertion that it did not improperly withhold documents, while relevant to Smoot's independent Motion for Sanctions, is not relevant to the issue of whether Smoot has shown good cause for supplementation of her briefing. As to the parties' dispute over the relevancy of the newly produced text messages, the court has carefully reviewed the material produced by Dutton and finds that at least some of the messages appear to relate to issues raised on summary judgment. (*See, e.g.,* Doc. 67 at 6-8 (providing ten examples of messages that discuss compensation, hiring, discipline, and job performance)). These messages also appear to be responsive to the discovery requests for production and subpoena issued to Dutton. (*E.g.,* Doc. 59-3 at 7; Doc. 59-4 at 13). Therefore, without affirmatively determining the relevancy, or admissibility, of any of the messages produced by Dutton <u>at this time</u>,[7] the court finds that Smoot has established good cause for leave to supplement her responsive filings to H&Z's Motion for Summary Judgment.

Notably, H&Z has not argued that it would be prejudiced by Smoot's request to supplement summary judgment briefing. Given the short passage of time (exactly

---

[7] The parties may re-assert their arguments pertaining to the relevancy and admissibility of the January 30, 2010, text message that Haley allegedly sent to Boles, then forwarded to Dutton, and the court will consider those arguments when it addresses H&Z's Motion for Summary Judgment.

one week) between the Motion for Summary Judgment coming under submission and

the filing of Smoot's request for supplementation, the court finds there would be no

prejudice in terms of undue delay. Also, the Court will afford Defendant the

reciprocal opportunity to supplement its Reply brief, as further set out below.

Therefore, for good cause shown, Plaintiff's Motion To Supplement Response

is due to be granted to the extent that Plaintiff will be granted leave to <u>re-file</u> her

Response to Defendant's Motion for Summary Judgment, which may include

supplemented facts, evidence, and argument <u>limited to the subject matter presented</u>

<u>in her Motion To Supplement Response</u>. Likewise, Defendant will be granted leave

to <u>re-file</u> its Reply brief, supplemented only to the extent that it seeks to address any

of the supplemented material contained in Plaintiff's  Response.

## III.    MOTION TO COMPEL

Several of Plaintiff's requests for relief ask the Court to compel production

and/or allow inspection of certain materials and devices. Specifically, Plaintiff asks

the Court to:

> B.    Order[] H&Z and Boles' [sic] to immediately produce all electronic communication[s] responsive to Smoot's discovery and subpoena requests, including but not limited to those text messages sent or received by Zito, Haley, and Boles and any electronic communication sent or received by other employees of H&Z that are responsive to Smoot's discovery requests;

. . .

D.      Order[] H&Z to produce all cell phones used by Zito, Haley and Boles from December 2007 through the present for inspection by an independent forensic expert; [and]

E.      Further order[] H&Z and Boles to allow the inspection of their email and computer systems by a forensic expert to determine if H&Z has withheld or destroyed additional electronic evidence[.]

(Doc. 63 at 17). The Court addresses each of these requests in turn.

First, H&Z's request to compel production of all responsive electronic discovery, including text messages, cannot be granted. Responding in opposition, H&Z submitted the sworn affidavits of Haley (Doc. 65-1, Ex. 1), Zito (Doc. 65-1, Ex. 2), and Boles (Doc. 65-1, Ex. 3) to show that the documents requested (in the form of text messages sent or received on their personal cell phones), do not exist, or are impossible to retrieve. Each of these individuals attest under oath that their personal cell phones that would have contained any potentially responsive messages from the relevant time period have "malfunctioned" or been destroyed beyond repair, such that the messages once were contained on those phones cannot be recovered, despite their searches and various attempts to do so.[8]

_____

[8]  For example, Haley attests that the personal Blackberry he used in 2008 and 2009 "malfunctioned" in February 2009, and was replaced with a Blackberry Curve, which later "malfunctioned" in June 2010. (Haley Decl., Doc. 65-1, Ex. 1 at 4). He attempted to repair it, but was told that it could not be repaired due to "water damage." (*Id.*). From June 2010 to present, he has used a new Blackberry Curve, and his search of that phone did not produce any messages responsive to Smoot's discovery requests. (*Id.* at 4-5).

Given these sworn statements, it would be futile for the Court to grant
Plaintiff's Motion To Compel production of non-existent documents. *See* Doc. 65
("As H&Z and Ms. Boles <u>do not have any responsive documents</u>, an order compelling
them to produce [such] documents would be improper." (emphasis added)).[9]
Moreover, the Court's decision to do so could constitute reversible error. As the
Eleventh Circuit held in *Serra Chevrolet, Inc. v. General Motors Corporation, Inc.*:

> <u>GM could not produce what it did not possess</u>. Although the destruction
> of the documents by GM may have required the district court to engage
> in a spoliation analysis under Alabama law, *see Wal-Mart Stores, Inc.*
> *v. Goodman*, 789 So. 2d 166, 176 (Ala. 2000), <u>the district court abused</u>
> <u>its discretion when it held GM in civil contempt and imposed sanctions</u>

---

Similarly, Zito declares that of the various personal cell phones he used during the
relevant time period, one was "stolen from his car" March 2009; a second "malfunctioned" in
early May 2010 and was deemed by his cell phone carrier "irreparably damaged from exposure to
moisture or overheating," and a third phone "fell out of [his] car in the carpool line of [his]
children's elementary school, and was run over and smashed in the beginning of September
2010." (Zito Decl., Doc. 65, Ex. 2 at 3-4). A search of his current cell phone, in use as of
September 2010, did not reveal any responsive text messages. (*Id.* at 5).

Boles attests that "[t]he phone [she] used in 2008 and 2009 was damaged when [she]
accidentally dropped it in a bathtub." (Boles Decl., Doc. 65, Ex. 3 at 3). The replacement phone
was taken over by her mother, who replaced its SIM card, when Boles entered a drug
rehabilitation program in February 2010. (*Id.*). Thus, Boles's affidavit also concludes that she
was unable to locate any text messages responsive to Smoot's discovery requests and subpoena.
(*Id.* at 4).

[9]   Additionally, H&Z raises the issue that as to Boles, a non-party, an order compelling
production would be procedurally improper under Fed. R. Civ. P. 37. Acknowledging this
procedural error, Smoot, in her Reply brief, asks the Court to instead hold Boles in contempt,
pursuant to Fed. R. Civ. P. 45, because it is "reasonable to surmise that Boles's [sic] engaged in
text message exchanges with Zito and Haley related to her hiring and job responsibilities when
she replaced Smoot." (Doc. 67 at10). Court does not find Smoot's request to be well-taken under
Rule 45 given the circumstances, nor is it supported by any legal authority. The request to hold
Boles in contempt is therefore **DENIED**.

> for the failure by GM to obey the order of the district court to produce
> documents GM did not possess. *See Pesaplastic C.A.*, 799 F.2d at 1520
> ("A party held in contempt may defend his failure to obey a court's order
> on the grounds that he was unable to comply.").

446 F.3d 1137, 1148-49 (11th Cir. 2006) (emphasis added). *Serra Chevrolet* instructs

that a district court cannot order individuals or entities to produce documents they do

not have and physically cannot obtain. Plaintiff presents no evidence contradicting

the sworn affidavits of Zito, Haley, and Boles, all of which indicate that the evidence

Plaintiff seeks to compel is not possible to produce.  Plaintiff's Motion To Compel,

to the extent that it requests "all of Zito's, Haley's and Boles's devices [to] be

examined for responsive messages" (Doc. 67 at 10) is therefore due to be denied.

Second, Plaintiff's request "to produce all cell phones used by Zito, Haley and

Boles from December 2007 through the present for inspection by an independent

forensic expert" is due to be granted. Although the sworn declarations of Zito, Haley,

and Boles submitted by H&Z state that any potentially responsive *text messages* no

longer exist because of the malfunctioning of their previously used cell phones, the

declarations do not indicate whether the previously used *cell phones* still exist.

Because the court has already entered the Evidence Preservation Order, H&Z should

be in "custody, possession, and control" of "all cellular phones" of Smoot, Boles,

Zito, Haley, and Hutton that "contain[] or has ever contained any writing" responsive

to Plaintiff's discovery requests. Therefore, to the extent *any* of the defunct cell phones described in the declarations of Zito, Haley, and Boles are still in existence, and retrievable, they should have been surrendered to H&Z pursuant to the Evidence Preservation Order, and the Court will grant Plaintiff's request to have those devices inspected by an independent forensic expert.

Third and finally, Plaintiff's unopposed request to order "H&Z and Boles to allow the inspection of their email and computer systems by a forensic expert to determine if H&Z has withheld or destroyed additional electronic evidence" is to be granted as to H&Z (a party-defendant) and denied as to Boles (a non-party).

## IV.   MOTION FOR SANCTIONS

Plaintiff also seeks sanctions. In her Motion, she asks the Court to:

C.    Impos[e] any adequate sanctions upon H&Z, Boles, and/or their counsel for withholding evidence and denying its existence, including any and all sanctions available under Federal Rule [of] Civil Procedure 37(b)(2)(A);

. . .

F.    To the extent such inspection, admission or otherwise reveals the negligent or intentional destruction of text messages and emails, then issuing a finding that H&Z and Boles have spoiled evidence and sanctioning H&Z and/or its counsel as the Court may deem appropriate with default judgment, adverse instructions and/or monetary fines.

(Doc. 63 at 17-18).

At this juncture, however, Plaintiff's requests for sanctions are due to be denied as premature. Generally, a court cannot impose sanctions absent disobedience of an order. *See* Fed. R. Civ. P. 37(b) (describing available sanctions for failure to obey a discovery order). More specifically, as to H&Z's failure to provide electronically stored information, the Court reminds Plaintiff of Rule 37(e), which provides: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."

Further, to the extent that Plaintiff seeks sanctions based on spoliation, she has not yet established the requisite evidence of willfulness or bad faith. Spoliation is the intentional destruction of evidence or the "significant and meaningful alteration of a document or instrument." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (citation omitted).

> In the Eleventh Circuit, "an adverse inference is drawn from a party's failure to preserve evidence <u>only when the absence of that evidence is predicated on bad faith</u>." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (*per curiam*).
>
> While this circuit does not require a showing of malice in order to find bad faith, <u>mere negligence in losing or destroying records is not sufficient to draw an adverse inference</u>. *See id.* Plaintiffs present five instances of alleged spoliation and ask for corresponding sanctions. However, <u>Plaintiffs present no evidence that any party acted in bad faith regarding any of the instances</u>. As such, the district court did not err in

12

declining to draw an adverse inference against the defendants.

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (emphasis added).

Smoot posits, without citation to authority, that H&Z's failure to produce is, *of itself*,

evidence of bad faith. (Doc. 67 at 10 ("For H&Z not to produce – either intentionally

or grossly negligently – is evidence of bad faith in the discovery and litigation

process.")). However, Smoot has not proven that H&Z's failure to produce was

intentional, and negligence is not enough to support an award of spoliation sanctions.

*Id.*; *see also Southeastern Mechanical Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293,

1299 (M.D. Fla. 2009) ("Mere negligence in losing or destroying records is not

enough for an adverse inference instruction.").

Therefore, because Plaintiff's requests for sanctions are not yet ripe, the Court

will deny her Motion for Sanctions without prejudice to re-filing at a later date if she

can demonstrate willfulness or bad faith.

## IV.   CONCLUSION

Accordingly, the Court hereby **ORDERS** as follows:

1.   Plaintiff's Motion To Supplement Response (Doc. 59) is **GRANTED**. Plaintiff shall have sixty (60) days from the date of this Memorandum Opinion and Order to re-file her Response brief and evidentiary submissions (Docs. 50-56) with supplemental evidence and/or legal analysis, consistent with the instructions as set out in this Order. Defendant shall have fourteen (14) days thereafter to re-file its Reply brief, if desired, consistent with the instructions set out in this Opinion.

2.      Plaintiff's Motion To Compel is **GRANTED IN PART** and **DENIED IN PART** as set out above. Specifically, any cellular devices that are in Defendant's counsel's possession pursuant to the Evidence Preservation Order must be delivered to Plaintiff's counsel for inspection by a forensic expert within **seven (7) calendar days** of the date of this Order. Additionally, Defendant must immediately make available to Plaintiff its email and computer systems for inspection by a forensic expert as arranged by Plaintiff; Defendant is further prohibited from altering or deleting any electronically stored information in its computer system, including its emails and software programs, until after any such forensic examination is complete. If either inspection reveals evidence of willfulness or bad faith, Plaintiff may renew its Motion for Sanctions within sixty (60) days of the date of this Order.

3.      Plaintiff's Motion for Sanctions is **DENIED** as premature, without prejudice to re-filing at a later date if Plaintiff can substantially support such a motion with evidence of willfulness or bad faith.

4.      Plaintiff's Motion for Leave To Amend Scheduling Order (Doc. 63) is **GRANTED** to the extent that the briefing deadlines on Defendant's Motion for Summary Judgment (Doc. 47) are extended for supplementation pursuant to Paragraph 1 above. The Court will enter a separate Amended Scheduling Order to revise the remaining case deadlines accordingly, including the anticipated trial date.

**DONE** and **ORDERED** this the 17th day of November, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge